IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ACE AMERICAN INSURANCE COMPANY,         )
                                        )
            Plaintiff,                  )
            Counter-defendant,          )
                                        )
       v.                               )   No. 07 C 5037
                                        )
RC2 CORPORATION, INC.,                  )
LEARNING CURVE BRANDS, INC., and        )
LEARNING CURVE INTERNATIONAL, INC.,     )
                                        )
            Defendants                  )
            Counter-Claimants.          )

## OPINION AND ORDER

In this action, plaintiff-counterdefendant ACE American Insurance Co. sought a declaration that it did not have a duty to defend or indemnify defendants-counterplaintiffs RC2 Corporation, Inc., Learning Curve Brands, Inc., and Learning Curve International, Inc. in lawsuits based on defendants' alleged sale of children's toys containing lead paint. Defendants counterclaimed for a declaration that there is a duty to defend and for related claims seeking reimbursement of defense costs that defendants have incurred defending themselves in the underlying lawsuits. Since all the underlying lawsuits were still pending at the time of ruling on summary judgment, plaintiff's claims were not yet ripe to the extent the claims

were based on indemnity.[1]  See Lear Corp. v. Johnson Elec. Holdings, Inc., 353 F.3d 580, 583 (7th Cir. 2003); Ace Am. Ins. Co. v. RC2 Corp., 568 F. Supp. 2d 946, 957 (N.D. Ill. 2008) ("Ace I"); Ace Am. Ins. Co. v. RC2 Corp., Inc., 2008 WL 4922596 *1 (N.D. Ill. Nov. 13, 2008) ("Ace III"); St. Paul Mercury Ins. Co. v. Commercial Prop. Assoc., 2005 WL 1126883 *2-3 (N.D. Ill. May 10, 2005), reconsideration denied, 2005 WL 1500922 *1-2 (N.D. Ill. June 15, 2005).

On the parties' cross-motions for summary judgment,[2] it was held that plaintiff had a duty to defend under the applicable policies.  See Ace I, supra.  As a result, plaintiff's Complaint was subject to dismissal and defendants were entitled to a declaration that plaintiff had a duty to defend.  However, no final judgment was entered because defendants' counterclaims seeking reimbursement of their litigation expenses had not been raised in the summary judgment motion and remained to be resolved.  The parties were directed to attempt to resolve such

---

[1]Subsequent to the ruling on summary judgment, defendants amended their counterclaim to add declaratory and damages claims seeking indemnity for settlements that had been reached in the underlying lawsuits.  When answering the amended counterclaim, plaintiff contended indemnity issues were still not ripe for resolution.  Plaintiff has not moved to reinstate its indemnity claims or to file an amended complaint alleging its own indemnity claims are now ripe.

[2]Plaintiff labels its brief and a factual statement as being in support of its own summary judgment motion, but no formal summary judgment motion has been filed.  It is cross-moving in response to defendants' summary judgment motion.

issues and submit a draft judgment order if they could settle this damages issue. See id., 568 F. Supp. 2d at 958. The parties have not been able to resolve this issue. Presently pending are the parties' cross motions for summary judgment as to the amount of defense costs they have incurred. There is no factual dispute as to the amount of fees and costs that defendants have paid. There is a dispute as to whether certain categories of fees are reimbursable as defense costs.

For defense costs, defendants seek $1,706,838.70 plus prejudgment interest. Plaintiff contends the amount, before prejudgment interest, should be reduced by $313,366.43, to $1,393,472.27. The largest reduction would be $222,288.00, based on not allowing any fees for attorney time that was "block billed," but included some time that would not be chargeable as a defense cost.[3] Plaintiff also seeks reductions of $41,658.43 for defending claims against the retailers who sold the allegedly contaminated toys; $33,763.50 for attorney work related to public relations; and $15,656.50 attributable to reading newspaper

---

[3]This is time for which the attorney lists multiple tasks without itemizing how much time was spent on each task. Counsel that represented defendants in the underlying lawsuits has provided an affidavit setting forth estimates of how much of such time was devoted to the nonreimbursable tasks. The amount presently requested omits those estimated amounts. Plaintiff does not accept defendants' estimates, instead contending no fees should be awarded for an entire block if it includes any nonreimbursable task.

articles and Consumer Product Safety Commission ("CPSC") publications.

Relying on Taco Bell Corp. v. Continental Cas. Co., 388 F.3d 1069, 1075-77 (7th Cir. 2004) ("Taco Bell IV"), defendants contend no portion of their claimed defense costs is subject to challenge since they have actually paid the defense costs to outside attorneys. In Taco Bell IV, the Seventh Circuit held that in situations where a party has an incentive to minimize legal expenses (because it may not be able to shift them), "there is no occasion for painstaking judicial review." Id. at 1076. Like the present case, Taco Bell IV was a situation where an insurer unsuccessfully sought a declaration that there was no duty to defend and the insured hired its own counsel to defend the underlying suit while a duty to defend case was proceeding.[4] In that situation, the insurer was not entitled to an evidentiary hearing to determine the reasonableness of the fees incurred nor was the court required to examine the insurer's

---

[4]Plaintiff contends Taco Bell IV is distinguishable because, in that case, the insurer failed to defend, but did not bring its own suit for a declaration that it had no duty to defend. However, as stated in the case below, the pertinent insurer promptly brought such a suit in state court and that suit was stayed pending resolution of the related litigation. See Taco Bell Corp. v. Continental Cas. Co., 2003 WL 1475035 *4 (N.D. Ill. March 17, 2003), supplemental ruling, 2003 WL 21372473 (N.D. Ill. June 11, 2003) ("Taco Bell III"), aff'd in part, rev'd in part, Taco Bell IV. Moreover, regardless of whether the insurer acted promptly to resolve the duty to defend issue, the insured still has the same economic incentives to keep its costs down in case it is not ultimately able to shift the fees.

detailed analysis picking through the defense expenses submitted by the insured.

Here, it is unnecessary to determine the full parameters of the <u>Taco Bell IV</u> holding. Plaintiff is not questioning the reasonableness of the fees that defendant paid. Instead, it is questioning whether certain of the fees were for defense of the underlying lawsuits. The pertinent ruling in <u>Taco Bell IV</u> is based on an insured having an economic incentive to keep fees reasonable. While defendants had an economic incentive to keep the fees they incurred reasonable, they did not have a similar incentive to carefully segregate which fees were actually related to the defense of the underlying lawsuits. Defendants' incentive was to make sure the fees were a worthwhile expenditure, regardless of whether it was for defending the underlying suits or for some other business purpose. The contentions raised by plaintiff will be considered.

The burden is on defendants to adequately establish their reimbursable defense costs. See <u>Illinois Sch. Dist. Agency v. Pacific Ins. Co.</u>, 471 F.3d 714, 723 (7th Cir. 2006); <u>Thomas ex rel. Smith v. Sheahan</u>, 556 F. Supp. 2d 861, 891 (N.D. Ill. 2008). Block billing is not a good practice when fees will be sought and some of the attorney's work will not be awardable because block billing does not clearly separate out the awardable portions. See <u>Thomas</u>, 556 F. Supp. 2d at 891. Plaintiff contends that, in

such situations, no portion of such blocks should be awarded as fees. However, it is within the district court's discretion as to how to determine an appropriate allocation of block billing. See Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008); Farfaras v. Citizens Bank & Trust of Chicago, 433 F.3d 558, 559 (7th Cir. 2006); Thomas, 556 F. Supp. 2d at 891; Top Tobacco, L.P. v. North Atl. Operating Co., 2007 WL 2688452 *4 (N.D. Ill. Sept. 6, 2007); Medcom Holding Co. v. Baxter Travenol Lab., Inc., 1998 WL 704098 *10-11 (N.D. Ill. Sept. 30, 1998). Here, defendants have supplemented the time records with a declaration from their lead counsel in the underlying cases conclusorily stating that all the block billing items were reviewed and an appropriate allocation was made. There is no good reason to question the sincerity of the lead counsel. However, the estimated allocations were made well after the work was originally performed and lead counsel himself was not the one who performed all the work. Additionally, since defendants have the burden of proof and they are the ones responsible for not keeping more detailed records, any doubt as to an allocation should be resolved against defendants. See To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc., 953 F. Supp. 987, 1000 (N.D. Ill. 1997), aff'd, 152 F.3d 658 (7th Cir. 1998). Cf. Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., 264 F. Supp. 2d 753, 760 (S.D. Ind. 2003). Lead counsel gives no indication

that, in making the allocations, he resolved any doubts or slanted estimates in favor of noncompensable time. Therefore, the approximately $222,288.00 in block-billed time will be reduced approximately 10% to $200,000.00.

Included in defendants' defense costs are amounts paid to defend two retailers who were named as defendants in an underlying lawsuit. Defendants contend this is properly included in their defense costs because they did this for their own benefit to reduce any possible pass-through liability that they would have owed to the retailers if the retailers had incurred products liability for selling the toys manufactured or distributed by defendants.[5] Plaintiff contends these amounts should not be included in defense costs because neither defendants or the retailers tendered to plaintiff defense of the retailers. Defendants contend there was no obligation to separately tender a defense or notify plaintiff that they agreed to provide a defense for the retailers because plaintiff had already declined to provide a defense.

The parties' policies provide:

> If a claim is made or "suit" is brought against any insured, you must see to it that we

---

[5] In their opening brief, defendants also contended they had a contractual obligation to indemnify the retailers. Plaintiff pointed out that no indemnity contracts were provided to support this contention and defendants drop this argument in their reply.

>    receive prompt written notice of the claim or
>    "suit."
>       You and any other involved insured must:
>       1. Immediately send us copies of any
>    demands, notices, summonses or legal papers
>    received in connection with the claim or "suit;"
>       2. Authorize us to obtain records and other
>    information;
>       3. Cooperate with us in the investigation,
>    settlement or defense of the claim or "suit;" and
>       4. Assist us, upon our request, in the
>    enforcement of any right against any person or
>    organization which may be liable to the insured
>    because of injury or damage to which this
>    insurance may also apply.
>       No insureds will, except at their own cost,
>    voluntarily make a payment, assume any
>    obligation, or incur any expense, other than for
>    first aid, without our consent.

Citing only Massac County v. United States Fid. & Guar. Co., 113 Ill. App. 3d 35, 446 N.E.2d 584, 589 (5th Dist. 1983), defendants contend that plaintiff cannot rely on any failure to tender or the voluntary payment clause because plaintiff did not provide a defense. Massac, however, is a situation in which the insurer was estopped because it neither provided a defense nor brought its own declaratory action.[6] As defendants acknowledge earlier in their reply brief, such estoppel does not apply when, as here, the insurer timely brings a declaratory judgment action

---

[6]In Massac, the insured had initiated a declaratory judgment action, but the insurer did not. Massac held that this was not enough to avoid estoppel. However, the majority of Illinois Appellate Court cases apparently have held to the contrary. See L.A. Connection v. Penn-Am. Ins. Co., 363 Ill. App. 3d 259, 843 N.E.2d 427, 431 (3d Dist. 2006) (collecting cases). That is not an issue in the present case since, here, the insurer initiated the declaratory judgment action.

as here, the insurer timely brings a declaratory judgment action as to its duty to defend. See Employers Ins. of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 708 N.E.2d 1122, 1135 (1999); State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co. of Chicago, 386 Ill. App. 3d 945, 899 N.E.2d 408, 415-16 (1st Dist. 2008); L.A. Connection, 843 N.E.2d at 430; Scottsdale Ins. Co. v. City of Waukegan, 2007 WL 2740521 *3 (N.D. Ill. Sept. 10, 2007). Defendants do not cite any case holding that the tender requirement or a voluntary payment clause does not apply once the insurer denies a duty to defend the claim made directly against the insured and seeks declaratory relief to that effect. Even if the insurer has denied a duty to defend and is not providing representation while pursuing a declaratory action, the insured still must comply with any additional notice requirements or other obligations under the policy. See Federal Ins. Co. v. Arthur Andersen LLP, 522 F.3d 740, 744 (7th Cir. 2008) (while insurer pursued declaratory action, requirement of obtaining insurer's consent for settlement applied); Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 2008 WL 4328192 *7 (N.D. Ill. Sept. 16, 2008) (while insurer pursued declaratory action, insured's voluntary payment of defense costs of licensee without informing the insurer violated requirement that insured

"not assume any financial obligation to pay out any money without [insurer's] consent").[7]

The retailers are not insureds under the policy, so the retailers were not required to tender the claims made against them. Defendants, however, were required to provide "copies of any demands . . . or legal papers received in connection with the" underlying suits. Thus, defendants were obliged to provide any such documentation related to defending the retailers. But even ignoring that requirement, the voluntary payment clause required seeking plaintiff's consent both to assume the obligations of the retailers and to make any voluntary payment on the retailers' behalf. Since defendants failed to do this, they are not entitled to defense costs for the $41,658.43[8] expended defending the retailers.

---

[7]In Santa's Best, 2008 WL 4328192 at *6, the court held that there was no coverage for paying the defense costs of the licensee because those costs were actually paid by a distinct entity (SBC) that was related to the insured but not actually an insured. Alternatively the court held that, even if SBC were an insured, there would be no coverage for the reasons stated in the text. See id. at *7. Whether the latter is properly characterized as dictum or an alternative holding is not clear. Whether a holding or dictum, a district court case has only persuasive value; it cannot be binding precedent.

[8]Defendants object to including in this total $12,167.93 of work performed by the Edwards Angell Palmer & Dodge law firm as local counsel in underlying litigation. The time records of that firm make repeated reference to representing retailer Wal-Mart and defendants provide no declaration supporting that this firm performed work other than on behalf of Wal-Mart.

Plaintiff objects to the inclusion of public relations related expenditures. In his declaration, lead counsel in the underlying litigation states that the underlying lawsuits generated many press inquiries and that some press releases of defendants were quoted or attached to pleadings in the underlying lawsuits. He then conclusorily states that "efforts of the defense team to keep abreast of such information, and to ensure that RC2's public statements were consistent with the overall defense strategy, were integral to RC2's defense of the Underlying Suits." He also conclusorily states that attorney interaction with defendants' public relations firm was integral to the overall defense strategy and intended to ensure that defendants' public statements were consistent with defense strategy. "An important aspect of RC2's defense strategy was to counter the negative and widespread publicity surrounding the Toy Recalls and allay public concern about the Toy Recalls." It is also stated that defendants' communications with the public relations firm had to be analyzed to determine if any of statements were privileged communications that did not have to be disclosed in response to discovery requests.

Research regarding whether certain communications were privileged and therefore not subject to discovery in the underlying litigation is legal work, not public relations work. None of the entries of attorneys Healy and Okenfuss listed in

Exhibit 4 of Machado's affidavit will be excluded from defense costs.

Attorney Murphy's January 17, 2008 entry concerns a press release from underlying plaintiffs, presumably concerning the settlement of one or more underlying cases. That is legal work related to the settlement of the underlying litigation that will not be excluded from defense costs.

Defendants contend attorney Plawecki's September 27, 2007 entry makes no mention of public relations issues, but that entry starts: "Reviewed press releases regarding September 26 recall of . . . ."

As to all the entries identified by plaintiff, other than Healy's and Okenfuss's, the conclusory affidavit of lead counsel is insufficient to establish that any of this work was legal defense work. Those entries, which total $22,777.50,[9] will be deducted from defendants' claimed defense costs.

Last, plaintiff conclusorily objects to time spent reading newspaper articles and CPSC publications. Defendants' submissions adequately support that this research was legal work in defense of the underlying lawsuits, not public relations work or CPSC work. No additional reduction to defense costs will be made based on this set of entries identified by plaintiff.

---

[9]Many of the entries were block billed. Defendants, however, present no basis for allocating only a portion of any such blocked bill to public relations work.

In light of the above rulings, the appropriate amount of defense costs, before prejudgment interest, is $1,620,114.77. At the time appropriate for the entry of judgment, defendants will provide a new prejudgment interest calculation.

Defendants apparently request entry of a partial judgment at this time. At this point, all the duty to defend issues have been resolved. However, defendants' indemnity counterclaims have yet to be resolved. When ruling on summary judgment, it was determined that plaintiff's indemnity claims were not yet ripe. Ripeness, however, must be determined at the time of ruling. See Stewart v. Hannon, 675 F.2d 846, 850 (7th Cir. 1982); Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc.: Jurisdiction & Related Matters 3d § 3532.7 at 714 & n.5 (2008). At this point in time, defendants have paid all or most of the payments required under the settlements of the underlying actions. Even if some additional payments are required, indemnity issues are now ripe, at least to the extent of the payments already made and any definite amounts that will be due. See Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill. 2d 90, 607 N.E.2d 1204, 1221-22 (1992); Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill., 323 Ill. App. 3d 121, 751 N.E.2d 104, 114 (1st Dist. 2001), aff'd as modified on other grounds, 203 Ill. 2d 141, 785 N.E.2d 1 (2003); Taco Bell Corp. v. Continental Cas. Co., 2003 WL 124454 *3 (N.D. Ill. Jan. 13,

2003) ("Taco Bell I"); Buckley v. County of DuPage, 1998 WL 832641 *4 (N.D. Ill. Nov. 23, 1998). Since the indemnity issues contained in the counterclaim are now ripe and still pending, it must be decided whether it is appropriate to enter a Rule 54(b) judgment as to the duty to defend aspects of the case.

Previously, it was held that a partial judgment could not be entered on the duty to defend claims prior to determining defense costs. See Ace III, 2008 WL 4922596 at *2. The same general standard applies to the present request for a partial judgment that includes defense costs.[10]

> An order pursuant to Rule 54(b) requires a finding "that there is no just reason for delay." Fed. R. Civ. P. 54(b). In the present situation, there must be a distinct claim that has been fully resolved with respect to all parties. Lottie v. West American Insurance Co., of Ohio Casualty Group of Insurance Cos., 408 F.3d 935, 938 (7th Cir. 2005) (quoting Factory Mutual Insurance Co. v. Bobst Group USA, Inc., 392 F.3d 922, 924 (7th Cir. 2004)). The Seventh Circuit has "insisted that Rule 54(b) be employed only when the subjects of the partial judgment do not overlap with those remaining in the district court." Lottie, 408 F.3d at 938-39.
> > Rule 54(b) is not intended to provide an option to the district court to certify issues for interlocutory appeal. Factory

---

[10] The present motions for summary judgment do not address the issue of whether it is appropriate to enter a partial judgment at this time. The prior briefing on plaintiff's motion for entry of a Rule 54(b) judgment addressed whether it is appropriate to enter a partial judgment as to the duty to defend claims while duty to indemnify claims are still pending. In Ace III, it was unnecessary to resolve that question. See id., 2008 WL 4922596 at *2. The arguments raised in briefing this prior motion have been considered in making today's ruling.

> > Mutual, 392 F.3d at 924. Rather, Rule 54(b) allows appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court, where "separate" means having minimal factual overlap. Continental Cas. [Co. v. Anderson Excavating & Wrecking Co.], 189 F.3d [512], 516 [(7th Cir .1999)]. See also Ty, Inc. v. Publications Int'l Ltd., 292 F.3d 512, 515 (7th Cir. 2002), cert. denied, 537 U.S. 1110 (2003) ("separate" in the Rule 54(b) context does not mean arising under a different statute or legal doctrine but rather means involving different facts); Horwitz v. Alloy Auto. Co., 957 F.2d 1431, 1434 (7th Cir. 1992) (if there is a great deal of factual or legal overlap between counts, they are considered the same claim for Rule 54(b) purposes).
> > > The test for separate claims under the rule is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.
> > > Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1162 (7th Cir. 1997).
> > Lottie, 408 F.3d at 939.

Ace III, 2008 WL 4922596 at *2 (quoting AutoZone v. Strick, 2007 WL 683992 *2-3 (N.D. Ill. March 1, 2007)).

The duty to defend and indemnify are distinct claims that must be independently decided. However, while the precise standards and methods for resolving each are distinct, the two still involve overlapping facts and legal issues. The primary difference between resolving an insurer's duty to defend and its duty to indemnify is that the former is decided based on a broad

reading of the allegations of the underlying complaint while the latter is decided based on the ultimate liability that occurred and the underlying facts that are actually true. See Outboard Marine, 607 N.E.2d at 1221; Guillen, 751 N.E.2d at 114; Electric Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, 346 F. Supp. 2d 958, 967 n.8 (N.D. Ill. 2004), Taco Bell I, 2003 WL 124454 at *3. For purposes of determining indemnity, the facts alleged in the underlying complaint are not assumed to be true, but, absent collusion or a totally frivolous complaint, the facts that are actually determined to be true will bear some relationship to those that were alleged and will certainly overlap with the facts alleged. Also, for both the duty to defend and indemnity, the same legal principles for construing the language of the policy will apply. See, e.g., Electric Ins., 346 F. Supp. 2d at 967 n.8.

In the present situation, it is possible, but doubtful, that a factual dispute will exist regarding where the toys at issue were manufactured. The coverage territory issue for indemnity will probably be both legally and factually identical to the coverage territory issue for the duty to defend. In its Rule 54(b) briefs, plaintiff indicates it will likely raise "bodily injury" and "property damage" issues regarding indemnity. Those clauses of the insurance policies were previously construed and addressed regarding the duty to defend.

568 F. Supp. 2d at 954-56. The same construction of that policy language would be applied to the indemnity claims and the facts for the indemnity claims are likely to overlap with those assumed to be true regarding the duty to defend. Perhaps, based on actual facts, plaintiff will raise some coverage issues not raised regarding the duty to defend. There may also be some issues regarding particular amounts that plaintiff agreed to pay in settlement. Still, there likely will be substantial legal and factual overlap between the duty to defend and indemnity claims. Under that circumstance, this case is not appropriate for entering a partial judgment under Rule 54(b).

Previously, plaintiff had cited Taco Bell III, 2003 WL 21372473 at *1-2, in support of its contention that a duty to defend claim is appropriate for partial judgment when there is also an unresolved indemnity claim. Unlike the present case, however, in Taco Bell the indemnity claim was not yet ripe for resolution so there was no other then-litigable claim to separate from the duty to defend claim. Similarly, plaintiff cited the dictum in Horn v. Transcon Lines, Inc., 898 F.2d 589, 594 (7th Cir. 1990), that it is generally appropriate to enter judgment on a stand-alone duty to indemnify claim prior to resolving the issue of the amount of indemnity. That, however, is a situation where indemnity is not raised in the same case and the Seventh Circuit was specifically referring to circumstances, unlike the

present case, in which the amount of indemnity is not at issue because the underlying lawsuit is still pending. For the reasons stated above, the present case is not a situation in which the duty to defend and indemnity claims should be considered separate for Rule 54(b) purposes.

Prior to the next status hearing, the parties shall meet to discuss whether any discovery is necessary and what procedures will be necessary to resolve the remaining issues in this case.

IT IS THEREFORE ORDERED that defendants' motion for partial summary judgment [79] is granted in part and denied in part. Plaintiff's motion for summary judgment is granted in part and denied in part. On Count II of their amended countercomplaint, plaintiffs-counterclaimants are entitled to damages in the amount of $1,620,114.77 plus prejudgment interest. A status hearing will be held on May 21, 2009 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: APRIL 23, 2009